**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RALPH BAKER**, <br><br> Plaintiff, <br><br> v. <br><br> **ANDREA CARTER,** *et al.*, <br><br> Defendants. | Civil Action No. 25-2972 (ZNQ) (RLS) <br><br> **OPINION** |

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon an application to proceed i*n forma pauperis* ("IFP") by *pro se* Plaintiff Ralph Baker ("Plaintiff" or "Baker"). ("IFP Application," ECF No. 4.) As a result, pursuant to 28 U.S.C. § 1915(e)(2), the Court will conduct a *sua sponte* screening of the Complaint, ("Compl.," ECF No. 1).

      The Court has carefully considered Plaintiff's submissions. For the reasons set forth below, Plaintiff's IFP application will be **GRANTED**. Additionally, the claims in the Complaint challenging Plaintiff's convictions and sentence will be **DISMISSED WITHOUT PREJUDICE**; the claims against the Honorable Andrea G. Carter, J.S.C. ("Judge Carter"), the Honorable Edward M. Coleman, J.S.C. ("Judge Coleman"), and the Defendants from the Middlesex and Somerset County Prosecutor's Offices will be **DISMISSED WITH PREJUDICE**; and the claims against Harry Corey, to the extent they are brought against him in his individual capacity, will be **DISMISSED WITHOUT PREJUDICE**.

I. **BACKGROUND AND PROCEDURAL HISTORY**[1]

The following facts are derived from the Complaint and accepted as true only for the purposes of screening the Complaint pursuant to 28 U.S.C. § 1915(e)(2). Plaintiff filed his Complaint on April 14, 2025. (ECF No. 1.) Thereafter, on May 8, 2025, Plaintiff filed an application to proceed IFP. (ECF No. 4.)

Plaintiff is a convicted state inmate who filed his Complaint using a standard civil rights complaint form that asked him to provide information as to the nature of his claims. Plaintiff is

---

[1] Plaintiff currently and in the past has had numerous cases before the Court challenging, to some extent, his state court convictions. In one such decision, the Honorable Freda L. Wolfson summarized Plaintiff's state court convictions as follows:

> Plaintiff was convicted in separate trials in Middlesex County and Union County for robberies that occurred in 2002. A ski mask, bag, and gun seized in the Union County arrest was admitted at Baker's trials in Union and Middlesex Counties. *See id.* at 1–2. Baker was also charged in Somerset County with committing a July 2, 2002 armed robbery and aggravated assault. The Somerset County court apparently ruled that the ski mask, bag, and gun seized in the Union County arrest would be admissible and granted defendant's motion to have the mask tested for DNA. In 2006, the State Police laboratory informed the Somerset County authorities that the mask bore DNA linked to another man arrested in April 2003 for a masked armed robbery in Hudson County. The Somerset County indictment was dismissed voluntarily on April 3, 2008. Plaintiff sought new trials in both the Union County and Middlesex County matters based on newly discovered DNA evidence.
>
> In an unpublished decision dated June 28, 2017, the Appellate Division vacated the denials of Plaintiff's motions for a new trial in the Union and Middlesex County matters and remanded for evidentiary hearings on the DNA evidence to determine whether Baker could satisfy the newly-discovered evidence standard in either matter.
>
> On December 7, 2018, on remand and following an evidentiary hearing in Union County, the Honorable Candido Rodriguez, Jr., J.S.C., entered a Judgment of Dismissal, dismissing [defendant's] Union County convictions under Indictment No. 02-10-01265.
>
> Following an evidentiary hearing in Middlesex County, the Honorable Dennis V. Nieves, J.S.C., issued a written opinion on September 10, 2019, denying defendant's motion for a new trial in the Middlesex County matter.

*Baker v. Royce*, Civ. No. 22-1234, 2022 WL 11804025, at *3 (D.N.J. Oct. 20, 2022) (citations omitted). On November 21, 2019, the Honorable Andrea Carter, J.S.C., named as a defendant in this action, presided over Baker's resentencing on count two of the Middlesex County indictment and imposed an extended term of life imprisonment. *Id.* n.4.

currently incarcerated in the New Jersey Department of Corrections and has multiple habeas cases pending before the Court.

The Complaint is not a model of clarity. Plaintiff appears to bring this action pursuant to 42 U.S.C. § 1983 against Judges Carter and Coleman, state prosecutors Nancy Hulett ("Hulett"), Martha McKinney ("McKinney"), and James Lankford ("Lankford"), and a final individual, Harry Corey ("Corey"), whose role is unclear. (Compl. at 1.) As best the Court can infer, the Complaint is asserting multiple deprivations of Plaintiff's civil rights as a result of "[f]abricated evidence, solicited false testimony . . . altered [physical and forensic evidence]," and obstruction of justice. (*Id.* at 5–8, 9.) Plaintiff seeks $16,000,000 in damages. (*Id.* at 12.)

## II.     **IN FORMA PAUPERIS**

To proceed *in forma pauperis* under 28 U.S.C. § 1915(a), a plaintiff must file an affidavit that states all income and assets, that the plaintiff is unable to pay the filing fee, the "nature of the action," and the "belief that the [plaintiff] is entitled to redress." *See* 28 U.S.C. § 1915(a)(1); *Glenn v. Hayman*, Civ. No. 07-112, 2007 WL 432974, at *7 (D.N.J. Jan. 30, 2007). "In making such [an] application, a plaintiff must state the facts concerning his or her poverty with some degree of particularity, definiteness or certainty." *Keefe v. NJ Dept of Corr.*, Civ. No. 18-7597, 2018 WL 2994413, at *1 (D.N.J. June 14, 2018) (quoting *Simon v. Mercer Cnty. Cmty. Coll.*, Civ. No. 10-5505, 2011 WL 551196, at *1 (D.N.J. Feb. 9, 2011)).

Based on the information provided in Plaintiff's submissions, the Court finds that it is appropriate to permit him to proceed *in forma pauperis.* His IFP Application will therefore be **GRANTED**.

## III. REVIEW OF THE COMPLAINT

Once an application to proceed *in forma pauperis* has been granted, the Court is required to screen the complaint and dismiss the action *sua sponte* if, among other things, the action is frivolous or malicious, or if it fails to comply with the proper pleading standards. *See* 28 U.S.C. § 1915(e)(2)(B)(i)–(iii). Indeed, the Court must dismiss any claim, prior to service, that fails to state a claim under which relief may be granted under Fed. R. Civ. P. 12(b)(6).[2] *See* 28 U.S.C. § 1915(e)(2)(B); *Martin v. U.S. Dep't of Homeland Sec.*, Civ. No. 17-3129, 2017 WL 3783702, at *1 (D.N.J. Aug. 30, 2017) ("Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).").

Although courts construe *pro se* pleadings less stringently than formal pleadings drafted by attorneys, *pro se* litigants are still required to "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The general rules of pleading are set forth in Rule 8, which requires that a complaint contain:

> (1) [A] short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

---

[2] Hereinafter, all references to "Rules" or "Rule" refer to the Federal Rules of Civil Procedure unless otherwise noted.

> (2) [A] short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) [A] demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).

Here, the Complaint fails for several reasons. First, some of the allegations in the Complaint read as challenges to Plaintiff's state criminal convictions and sentences, which are likely barred by what is known as the "*Heck* bar." *Elozua v. State of New Jersey*, Civ. No. 04-2029, 2008 WL 370926, at *4 (D.N.J. Feb. 11, 2008). The *Heck* bar provides that a Section 1983 claim for money damages is not cognizable if success on such a claim would "necessarily imply the invalidity" of an underlying conviction or sentence. *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). As best the Court can discern, it appears that Plaintiff's allegations, brought under Section 1983, collaterally attack his state criminal convictions or sentence. For example, Plaintiff seeks $16 million in damages and alleges that Defendants fabricated evidence, solicited false testimony, altered physical evidence, improperly examined evidence, and obstructed justice during the pendency of his criminal proceedings. (*See generally* Compl.) Plaintiff's claims, should he be successful, therefore would "imply the invalidity of [his] conviction[s]" or sentence which is improper under *Heck v. Humphrey*. *See Gibson v. Superintendent of NJ Dep't of L. & Pub. Safety-Div. of State Police*, 411 F.3d 427, 449 (3d Cir. 2005) ("[I]n those cases in which a district court determines that success on the § 1983 claim would imply the invalidity of the conviction, the cause of action is deferred until the conviction is overturned."). Accordingly, insofar as Plaintiff is challenging his conviction, the Court will **DISMISS WITHOUT PREJUDICE** those claims.[3]

---

[3] Dismissal is *without* prejudice because should Plaintiff's convictions be overturned or shown invalid, he may then pursue his Section 1983 claims. *Ortiz v. New Jersey State Police*, 747 F. App'x 73, 79 (3d Cir. 2018).

Second, Plaintiff brings claims against Judges Carter and Coleman that are barred by judicial immunity. Judicial immunity "is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." *Figueroa v. Blackburn*, 208 F.3d 435, 440 (3d Cir. 2000); *Stump v. Sparkman*, 435 U.S. 349, 365–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority. . . "); *Gromek v. Maenza*, 614 F. App'x 42, 45 (3d Cir. 2015) (explaining that judicial immunity is not forfeited solely by allegation of malice or corruption of motive) (citing *Gallas v. Supreme Ct. of Penn.*, 211 F.3d 760, 768 (3d Cir. 2000)).

This immunity, however, is not absolute. Instead, it is "justified and defined by the functions it protects and serves." *Forrester v. White*, 484 U.S. 219, 227 (1988). Immunity does not extend to actions not within the judge's official capacity, nor does it extend to actions taken in the absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991). To determine whether an act is "judicial," courts look to whether the act performed by the judge "is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Gallas*, 211 F.3d at 768–69 (quoting *Stump*, 435 U.S. at 362).

Here, the Complaint does not assert, nor can it, that Judges Carter and Coleman acted outside their official capacity as state judges or that they acted in the absence of all jurisdiction. Insofar as Plaintiff alleges racial bias or profiling (Compl. at 10), improper motives or alleged racial bias does not defeat judicial immunity. *See Camilo v. Leopizzi*, Civ. No. 20-14937, 2021 WL 616014, at *4 (D.N.J. Feb. 16, 2021). Accordingly, the Court finds that the state judges are entitled to immunity from suit based on the allegations in the Complaint. *Stump*, 435 U.S. at 365–57. The claims against them therefore will be **DISMISSED WITH PREJUDICE**.

Third, Plaintiff brings claims against state prosecutors Hulett, McKinney, and Lankford that are barred by prosecutorial immunity. Under the doctrine of prosecutorial immunity, "prosecutors have absolute immunity from civil liability for their conduct in their role as prosecutors." *Newsome v. City of Newark*, Civ. No. 13-6234, 2014 WL 4798783, at *2 (D.N.J. Sept. 25, 2014). The Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409 (1976), held that "a state prosecuting attorney who act[s] within the scope of his [or her] duties in initiating and pursuing a criminal prosecution" is not amenable to suit. *Id.* at 410; *see also Pierre v. Treasury Dep't*, Civ. No. 18-3443, 2018 WL 5801549, at *7–8 (D.N.J. Nov. 5, 2018). This immunity applies to any action "intimately associated with the judicial phase of the criminal process" while a state prosecuting attorney is advocating for the State. *Imbler*, 424 U.S. at 430–31; *see also Moore v. Middlesex Cnty. Prosecutor's Office*, 503 F. App'x 108, 109 (3d Cir. 2012) ("Although a prosecutor's deliberate destruction of exculpatory evidence is not entitled to absolute immunity, the decision to withhold such evidence from the defense while functioning as an advocate for the State is protected by absolute immunity.").

Here, as an initial matter, Lankford is named as a defendant but there are no specific allegations against him. As to McKinney and Hulett, Plaintiff has not pled, nor can he, that they acted outside the scope of their official duties as prosecutors. Plaintiff alleges that "physical evidence of identification was[sic] altered . . . by the prosecution's office . . . in agreement and conspiracy of Matha B. McKinney, after DNA was stipulated within the four corners of the indictment from the Prosecution's office." (Compl. at 9–10.) However, it is clear that the state prosecutors were acting as advocates for the State and that their actions were "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430–31. As courts have made clear, prosecutors are absolutely immune from liability when they act as advocates for the State.

*Kalina v. Fletcher,* 522 U.S. 118, 126 (1997). That rule applies to allegations asserting witnesses' perjurious testimonies fostered by prosecutors or to the allegations alleged by Plaintiff here. *See Rose v. Bartle,* 871 F.2d 331, 345 (3d Cir. 1989) ("charges that the prosecutors induced witnesses to commit perjury are barred by the immunity doctrine"); *see also Jennings v. Shuman,* 567 F.2d 1213, 1221–22 (3d Cir. 1977) ("[A] prosecutor is entitled to absolute immunity while performing his official duties as an officer of the court, even if, in the performance of those duties, he is motivated by a corrupt or illegal intention.") (internal quotation marks omitted). Accordingly, Hulett, McKinney, and Lankford are immune from suit and the claims against them will be **DISMISSED WITH PREJUDICE**.

That leaves Harry Corey, an individual with the New Jersey Forensic Unit. It is unclear from the Complaint what Corey's exact employment position is. The case caption describes him as a "DNA Analyst" for the New Jersey State Forensic Unit but the text of the Complaint refers to him as a "CODIS Manger [sic, Manager]",[4] with the New Jersey State Police. (Compl. at 1, 5.) As to the specific claims against him, the Complaint appears to allege that Corey somehow mismanaged DNA evidence in a way that violated Plaintiff's constitutional rights. (*Id.* at 5.) No further detail is provided.

To the extent Plaintiff seeks money damages from Corey in his individual capacity—whether he is a forensic analyst or a CODIS manager—the doctrine of qualified immunity is implicated because Corey is a government official. The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for

---

[4] According to a FAQ on the Federal Bureau of Investigation's website, "CODIS is the acronym for the Combined DNA Index System and is the generic term used to describe the FBI's program of support for criminal justice DNA databases as well as the software used to run these databases. The National DNA Index System or NDIS is considered one part of CODIS, the national level, containing the DNA profiles contributed by federal, state, and local participating forensic laboratories." https://www.fbi.gov/how-we-can-help-you/dna-fingerprint-act-of-2005-expungement-policy/codis-and-ndis-fact-sheet (last visited May 16, 2025).

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Therefore, government officials are protected by immunity in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the alleged constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Here, there are no allegations in the Complaint pleading Corey's violation of a clearly established constitutional right. Accordingly, to the extent Plaintiff sues Corey in his individual capacity, the claims against him will be **DISMISSED WITHOUT PREJUDICE**.

### IV.    CONCLUSION

For the reasons stated above, the Court will (1) **GRANT** Plaintiff's IFP Application; (2) **DISMISS WITH PREJUDICE** the claims in the Complaint against the state judges; (3) **DISMISS WITH PREJUDICE** the claims in the Complaint against the state prosecutors; (4) **DISMISS WITHOUT PREJUDICE** any claim challenging Plaintiffs' state court convictions or sentence; and (5) **DISMISS WITHOUT PREJUDICE** the claims against Corey in his individual capacity.

The Court does not find at this time that further amendment to the claims against Corey are futile. Accordingly, the Court will give Plaintiff leave to file an Amended Complaint within thirty days from the date of the accompanying Order, limited to addressing the defects noted as to the claims against Corey set forth in this Opinion. If Plaintiff does not file an Amended Complaint by that deadline or does not cure the defects identified herein, this matter will be dismissed with prejudice. An appropriate Order will follow.

Date: May 19, 2025

                                                  s/ Zahid N. Quraishi
                                                  **ZAHID N. QURAISHI**
                                                  **UNITED STATES DISTRICT JUDGE**